IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LATISA N. CONWAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-0106-CV-W-ODS |
| ) | |
| JO ANN B. BARNHART ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

<u>ORDER AND OPINION REVERSING AND REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY FOR CALCULATION AND AWARD OF BENEFITS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405 (g)</u>

Pending is an appeal of the Commissioner's final decision denying Latisa N. Conway's application for disability benefits. After reviewing the record, the Commissioner's decision is reversed and remanded.

I. BACKGROUND

A. Procedural History

On July 30, 2002, Plaintiff filed an application for Supplemental Security Income Benefits. Her application was initially denied. Upon Plaintiff's request, a hearing before an Administrative Law Judge was held on August 24, 2004. On October 1, 2004, the ALJ issued a decision in which he found that Plaintiff was not under disability within the meaning of Social Security Act. On December 4, 2004, the Appeals Council of the Social Security Administration denied Plaintiff's request for review.

B. Summary of the Record

Plaintiff was born on February 29, 1976, and was in Special Education classes from the sixth grade until she dropped out of school in the eleventh grade. R. at 110. She currently lives with her son at her mother's apartment, where she does the majority of the chores around the house. R. at 29. Because Plaintiff does not have a car, she uses the bus and other public transportation to get around. R. at 30. Plaintiff's highest

earnings came in 1992, when she was 16 years old and earned $753.25. Thereafter, Plaintiff earned either less than $100 or reported no earnings at all. R. at 85. She has filed three prior applications for supplemental security income; each was denied and none were appealed.

Plaintiff claims that she is unable to work due to attention hyperactive deficit disorder (ADHD) and learning disabilities. R. at 104. This limits her ability to focus, follow instructions and complete tasks. R. at 104. Her past jobs have included janitorial duties, maintenance and cashier duties and child care. R. at 105.

Plaintiff reported that she had been "depressed" starting at age 13 or 14, and that taking anti-depressant medications helped sometimes. R. at 17. Currently, she describes her depression as "off and on" including symptoms such as crying spells and a low self-image.

In 1998, Plaintiff underwent a consultative psychological evaluation by Dr. Keith L. Allen. R. at 124. Plaintiff arrived in a cab and was late for the initial appointment. She told Dr. Allen that she wanted help in getting job or business training. At that time, she was taking Zoloft for depression and felt that the medication helped her to feel better sometimes. R. at 125. Dr. Allen administered the following tests: Wechseler Adult Intellenge Scale-Revised (WAIS-R), Woodcock-Johnson Psycho-Education Battery (WJR), Minnesota Mulitphasic Personality Inventory (MMPI), Career Interest Inventory (CAI) and Psychological Consulation. R. at 124. He found that Plaintiff's WAIS-R scores place her in the borderline intellectual functioning intelligence classification. R. at 125. Plaintiff demonstrated relative strengths in short-term auditory memory, and her score indicated a poor knowledge of word meanings relative to her other verbal abilities. R. at 126. On the WJR, Dr. Allen found that she is functionally literate. Plaintiff achieved a verbal IQ score of 72, a performance IQ of 80, and a full scale IQ score of 74. R. at 126. She demonstrated an ability to sound out words at a 4th grade level and her ability to comprehend what she reads at a 6th grade level. Plaintiff has 5th grade math skills, but was inconsistent with her ability to perform simple addition, subtraction, multiplication and division. R. at 127. Plaintiff's "Broad Knowledge" is at the 3rd grade level, significantly below average. Her knowledge of science is also at a 3rd grade level, while

2

her knowledge of Humanities is at a 2nd grade level and her knowledge of social studies is a 4th grade level. R. at 127. Her basic writing skill were found to be significantly below average, at a 3rd grade level. R. at 127.

When taking the MMPI, Plaintiff failed to follow directions and sometimes circled both "true" and "false" answers. R. at 128. Her responses reflected mild to moderate depressive symptoms, as well as mild independence and non-conformity. R. at 128. Dr. Allen opined that Plaintiff's responses were similar to persons who have a poor self concept and who typically show a rigid, inflexible approach to problem solving. R. at 128.

During the psychological consultation, Plaintiff acknowledged that she "used to be depressed" but that it was not as bad since she had been on medication. She admitted to crying spells, but denied suicidal or homicidal thoughts. R. at 128. She reported feeling helpless, hopeless and worthless. R. at 128. Dr. Allen felt that Plaintiff demonstrated no difficulties attending to, or participating in the procedures, as well as adequate concentration, persistence and paces with testing materials without evidence of mental confusion or psychosis. R. at 128. Plaintiff had adequate reactions to both success and failure during testing. R. at 128. Dr. Allen concluded that Plaintiff would perform better in vocational areas that are more performance oriented, do not require average or better academic skills, and which allow greater than an average amount of time to learn. R. at 129.

Plaintiff underwent a vocational assessment from November 26, 2001 through March 27, 2002 with The Helping Hand of Goodwill Industries. Plaintiff performed a variety of duties, including janitorial, food service, retail and clerical. R. at 90. The final assessment of the counselor was that Plaintiff was polite and interacted well with others. She maintained a good work pace and produced quality work. However, Plaintiff was consistently late for assessment, even after the repercussions of tardiness were discussed. R. at 99. The counselor found that Plaintiff was easily fatigued and often fell asleep when not active. R. at 99. However, during other assessments, Plaintiff followed directions well and maintained good concentration. R. at 96. She was recommended to return for another four-week session, but failed to show up and was unable to be

reached. R. at 102.

Plaintiff's medical records from Swope Parkway Behavioral Health Center (Swope), dated June 24, 2002, show Plaintiff complained of depression but did not know how to deal with it. She stated that she had previously been prescribed medication but not longer took it. R. 139. Plaintiff admitted that she drinks occasionally. R. at 143. Plaintiff admitted she had no physical problems and that she enjoyed activities including bowling, skating, and going to clubs. R. at 145. The medical records indicate Plaintiff did not follow up with counseling, and was discharged in December 2002, because she failed to return.

On September 26, 2002, Plaintiff underwent a psychological evaluation performed by Dr. Ronald Holzschuh to evaluate her learning disability and ADHD. R. at 148. While Dr. Holzschuh found Plaintiff relaxed and friendly, he felt that she tried too hard to say "the right things." R. at 149. Plaintiff explained her daily routine as looking for a job during the mornings and afternoons, even though she has not been employed since 2000. R. at 149. He found that she attempted to present herself in a very positive light, and had some indications of distorted thinking. R. at 149. Dr. Holzschuh noted that Plaintiff arrived 45 minutes late for their appointment, which is consistent with other reports of tardiness and absences. He found her capable of understanding and remembering simple instructions and that her attention and concentration were adequate. R. at 149. Dr. Holzschuh diagnosed Plaintiff with dependant personality disorder. R. at 149.

On March 15, 2004, Plaintiff was voluntarily admitted to Western Medical Health Center for an evaluation. R. at 165. Plaintiff admitted that she attempted to jump out of the 3rd story window of her apartment building as a result of stress, including her unemployment, impending eviction, and her nine year old son's behavior. R. at 165. Dr. Zhivko Daskalov, the treating psychiatrist, found Plaintiff preoccupied with the difficulties in her life and her intellect below average. R. at 165. Plaintiff was prescribed Lexapro and Depakote to treat depression and Trazodone for a sleep aide. On March 19, 2004, she was discharged, diagnosed with adjustment disorder with disturbance of emotions and conduct and histrionic personalities features. R. at 166. Dr. Daskalov

4

recommended she continue the prescribed medications and undergo outpatient therapy. R. at 171.

Thereafter, Plaintiff visited Truman Medical Center for medication management on March 22, 2004. She complained of weight loss, excessive tiredness and frequent headaches. R. at 188. Her recommended stay was six months to a year in order to evaluate Plaintiff for continued medical treatment. R. at 189. The record is not detailed, but indicates a finding of depressive disorder and only indicate Plaintiff visited on one occasion.

The ALJ found that while Plaintiff is limited in some ways as a result of her mental impairments, the medical and vocational evidence does not support the extreme degree of limitations Plaintiff alleges. R. at 20. The ALJ did not find Plaintiff's allegations credible based of the record. Further, the ALJ found that the medical evidence did not establish the presence of a medically determinable physical impairment, and that Plaintiff retains no significant limitation of ability to perform basic physical work-related activities. She is limited to simple repetitive job tasks. R. at 20. Further, Plaintiff requires performance-oriented jobs requiring only low academic skills, which provide for greater than average time to learn new job tasks, but she otherwise retains no significant limitation of ability to understand and carry out simple instructions; use simple judgment; respond appropriately to supervision, coworkers, and usual works situations; and deal with changes in a routine work setting. The ALJ found that while Plaintiff has held some unskilled jobs at the light exertion level, those jobs were for a brief duration and do not rise to the level of vocational relevance under the regulations. R. at 20.

The ALJ determined that Plaintiff has never engaged in substantial gainful activity, has a combination of impairments considered "severe based upon the requirements in the regultations, and does not have an impairment or combinations of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. R. at 21. The ALJ further concluded that Plaintiff retains the capacity for work that exists in significant numbers in regional and national economies and is not under a "disability" as defined in the SSA. R. at 22.

## II. DISCUSSION

Plaintiff appeals the decision of the Commissioner of the Social Security Administration claiming the ALJ improperly determined that Plaintiff's intellectual functioning did not equal a listed impairment.

### A. Standard

The decision must be affirmed if "the Commissioner's findings are supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

### B. Intellectual Functioning

The ALJ followed the five-step process in determining the validity of the disability. See Cox v. Apfel, 160 F.3d 1203, 2206 (8th Cir. 1998). First, it is undisputed, that Plaintiff has never engaged in substantial gainful activity. R. at 21. Second, it must be determined if Plaintiff's impairments are severe. The ALJ determined that Plaintiff has a combination of impairments considered "severe" based upon the requirements of 20 CFR § 416.920(b). R. at 21. However, under the third step, the ALJ determined that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. R. at 21. Plaintiff argues that the ALJ erred in determining that her impairment did not result in the functional limitations of Listed Impairment 12.05-C. See 20 C.F.R. Pt. 404, Subpt.

P, App. 1, § 12.05C (2005). The Court concludes there is inadequate evidence in the record as a whole to support the ALJ's decision.

Under §12.05C, Plaintiff is required to have a "verbal, performance or full scale IQ of 60 through 70 and a physical or mental impairment imposing additional and significant work-related limitation of function."  When the ALJ determined Plaintiff's IQ to be 72,  he ruled that she did not meet Listing 12.05C because her IQ scores did not fall between 60 and 70. However, according to the Program Operations Manual Systems (POMS), slightly higher IQ's (70-75) in the presence of other physical or mental disorders that impose additional and significant work related limitation of function may support an equivalence determination. Although POMS guidelines do not have legal force, and do not bind the Commissioner, the Court of Appeals has instructed that an ALJ should consider the POMS guidelines. Shontos v. Barnhart, 328 F 3d 418, 424 (8th Cir. 2003).  The ALJ should have continued his analysis to determine if Plaintiff's impairments were the functional equivalent of any listing and there is no indication in the record that the ALJ considered the POMS guidelines.

Plaintiff reports feelings of depression beginning at age 13 or 14. She has been on and off different medications to treat her depression throughout the years. When taking the MMPI, Plaintiff's responses reflected mild to moderate depressive symptoms, as well as mild independence and non-conformity.  Plaintiff admitted to crying spells when she felt overwhelmed and attempted suicide as a result of stress. Plaintiff's IQ combined with her depression, dependant personality disorder, adjustment disorder with disturbance of emotions and conduct and histrionic personalities features, all combine to and significantly limit Plaintiff's ability to do basic work activities.  The Court finds Plaintiff satisfies both prongs of listing 12.05C due to her IQ of 72 and combination of mental impairments and is therefore disabled.

### III. CONCLUSION

The Commissioner's final decision is not supported by substantial evidence in the record as a whole. Therefore, the decision is reversed and the case is remanded to the Commissioner of Social Security with instructions to award benefits.

7

Case 4:05-cv-00106-ODS   Document 15   Filed 12/14/05   Page 7 of 8

IT IS SO ORDERED.

Date: December 14, 2005                              /s/   Ortrie D. Smith
                                                     ORTRIE D. SMITH, JUDGE
                                                     UNITED STATES DISTRICT COURT